UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| TOMMY RODGERS, | NO. C17-5476-JPD |
|---|---|
| Plaintiff, | |
| v. | ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Tommy Rodgers appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court ORDERS that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a forty-one year old man with a tenth grade education. Administrative Record ("AR") at 45. Plaintiff did not obtain his GED, and asserts that he was enrolled in special education classes throughout school. AR at 45, 515-16. His past work experience includes part-time employment as a retail stocker, gas station

ORDER - 1

cashier, and fast food worker. AR at 46-48, 64, 227, 233. Plaintiff was last gainfully employed in December 2012. AR at 48.

On August 9, 2013, plaintiff filed applications for SSI payments and DIB, alleging a disability onset date of September 30, 2012. AR at 19, 42. Plaintiff asserts that he is disabled due to a brain injury following a clipped aneurysm. Specifically, plaintiff sustained a head injury in a motor vehicle accident in September 2013, and then developed an unruptured brain aneurysm, for which he underwent surgery in January 2014. AR at 318, 378-80, 387, 392-93, 399. Plaintiff claims that he has been unable to work since the surgery. Plaintiff reports that his symptoms include depression, memory loss, dizziness, fatigue, angry outbursts, and migraines. AR at 41, 49-52.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 19. Plaintiff requested a hearing, which took place on November 19, 2015. AR at 37-75. On February 1, 2016, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 16-31. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, AR at 1-7, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On June 22, 2017, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 4.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by

ORDER - 2

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### IV. EVALUATING DISABILITY

As the claimant, Mr. Rodgers bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in

ORDER - 3

any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d),

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On February 1, 2016, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2017.

2. The claimant has not engaged in substantial gainful activity since September 3, 2013, the amended alleged onset date.

3. The claimant has the following severe impairments: status post communicating artery aneurism clipping, migraine, borderline intellectual functioning, attentions deficit hyperactivity disorder (ADHD), and affective disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He should not climb ladders,

ORDER - 5

ropes or scaffolds. He can occasionally climb ramps and stairs, kneel and crawl. He can perform simple repetitive tasks. He should not interact with the public. He can have occasional superficial contact with coworkers. He can have few, if any, changes in work setting.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1974 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[2]

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 3, 2013, through the date of this decision.

AR at 21-31.

VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in evaluating plaintiff's testimony?

2. Did the ALJ err in evaluating the lay witness testimony?

Dkt. 10 at 1; Dkt. 14 at 1.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

ORDER - 6

## VII. DISCUSSION

### A. The ALJ Erred in Evaluating Plaintiff's Testimony

#### 1. Legal Standard for Evaluating the Plaintiff's Testimony

As noted above, it is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.[3] *Burrell v. Colvin* 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's

---

[3] In Social Security Ruling (SSR) 16-3p, the Social Security Administration rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation." SSR 16-3p. However, this change is effective March 28, 2016 and not applicable to the February 1, 2016 ALJ decision in this case. The Court, moreover, continues to cite to relevant case law utilizing the term credibility.

ORDER - 7

complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

> 2. *The ALJ's Reasons for Giving Plaintiff's Testimony Limited Weight Were Not Clear and Convincing or Supported by Substantial Evidence*

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." AR at 24-25. Specifically, the ALJ found that (1) plaintiff's allegations are inconsistent with the medical evidence; (2) plaintiff's lack of treatment suggests his symptoms are not as serious as alleged; and (3) plaintiff's activities of daily living are not limited to the extent one would expect, given his complaints of disabling symptoms and limitations. For the reasons discussed below, the Court finds that the ALJ's reasons were not clear and convincing, or supported by substantial evidence.

> (a) *Inconsistency with the Medical Evidence*

The ALJ summarized plaintiff's statements regarding his symptoms, including his report of blurry vision and chronic migraines every day, that he could walk a block before needing to rest, that his migraines were so bad he cannot get out of bed and conduct daily functions of living, and that he had headaches "almost every day" and dizziness once a day. AR at 27 (citing 50, 52, 262-69, 272-75). The ALJ found that "treatment providers and examiners repeatedly had unremarkable neurologic examinations of the claimant." AR at 27. For

example, Dr. McGlothlen found plaintiff had no motor deficits, and ARNP Calderon found he had normal gait and no motor weakness. AR at 319, 324, 333, 338, 349, 390, 392, 394. ARNP Hamilton found he had normal visual acuity, intact balance, full motor strength, no ataxia to cerebellar testing of the upper and lower extremities, and stable gait. AR at 402. Dr. Coor found he had steady gait, negative Romberg, and full strength in the upper and lower extremities. AR at 506-12. Dr. Eaton found he had normal gait. AR at 531-34. The ALJ cited these unremarkable physical examination findings, and concluded that plaintiff's testimony regarding the severity of his symptoms were not fully credible. AR at 27.

      Similarly, the ALJ found that contrary to plaintiff's allegation that he could pay attention for only five minutes, consultative psychological examiner Dr. Tasmyn Bowes found he was alert, responsive and fully oriented, and that he showed no evidence of signs of confusion or lack of awareness. AR at 27, 518. The ALJ also pointed out that on mental status examination ARNP Dean Hamilton found he had "normal attention, concentration and memory", and ARNP Julie Calderon found he had grossly normal intellectual and intact memory. AR at 27, 387-96, 399-403.

      Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's testimony regarding the changes he experienced after his car accident and brain surgery, including headaches that plaintiff asserts were often debilitating, extreme fatigue, depression, and irritability that led to outbursts and conflicts with others. Dkt. 10 at 4. Specifically, plaintiff contends that the normal neurological findings cited by the ALJ did not actually contradict plaintiff's testimony, as the normal findings "did not address Mr. Rodgers' testimony that he had chronic headaches that sometimes became debilitating, extreme fatigue, and irritability that led to outbursts and conflicts with others." Dkt. 10 at 6.

The Commissioner simply asserts that "plaintiff did not complain of these alleged problems when he saw his treating and examining doctors; therefore, the ALJ did not err in finding Plaintiff's testimony was inconsistent with the medical record." Dkt. 14 at 9. However, the ALJ did not rely on a "lack of reporting" his symptoms during his examinations as a reason for discounting plaintiff's statements. In addition, the Commissioner does not explain how the normal findings cited by the ALJ relating to gait and balance, lack of motor weakness/deficits in the upper or lower extremities, etc., contradicted plaintiff's testimony regarding symptoms such as migraines, headaches, fatigue, irritability, and dizziness.

Similarly, although the ALJ correctly noted that consultative psychological examiner Dr. Tasmyn Bowes found plaintiff alert and oriented and exhibiting no evidence of confusion or lack of awareness during the mental status examination, AR at 27, it is not clear how such a finding contradicts plaintiff's testimony regarding his inability to concentrate for a sustained period of time. Other aspects of Dr. Bowes' report appear consistent with plaintiff's allegations of difficulty sustaining concentration. Her cognitive testing showed an IQ of 75, with "relative weakness in subtests that require freedom from distractibility and sustained concentration." AR at 518. Dr. Bowes found that plaintiff had "difficulty paying close attention to detail and his processing speed was in the extremely low/borderline range." AR at 518. Dr. Bowes also diagnosed plaintiff with ADHD, which seems consistent with his allegations regarding his ability to sustain concentration. AR at 519. The ALJ does not discuss this aspect of Dr. Bowes' opinion at all in relation to plaintiff's allegation that he could only pay attention for about five minutes. AR at 27.

Accordingly, inconsistency with the medical evidence was not a clear and convincing reason for the ALJ to reject plaintiff's testimony regarding his symptoms. On remand, if the ALJ believes that the medical evidence is inconsistent with plaintiff's statements, the ALJ must

ORDER - 10

better explain his reasoning. Without more, it is not at all clear how plaintiff's "normal gait and no motor weakness," for example, contradict his complaints of migraines, dizziness, and fatigue. Similarly, the fact that plaintiff is "alert and oriented" with "normal concentration and memory" during a brief mental status examination does not refute plaintiff's testimony regarding his difficulty with sustained concentration, especially in light of evidence in the record to the contrary that the ALJ does not acknowledge.

    *(b)*    *Limited Treatment Record*

The ALJ also found that plaintiff's lack of treatment suggested his symptoms were not as serious as alleged, because the medical evidence shows minimal medical treatment and the record shows no history of psychotic hospitalizations or mental health treatment. AR at 27. The ALJ noted that "the claimant also reported he had never participated in mental health treatment of any kind and he had never been hospitalized for mental health difficulties." AR at 27 (citing AR at 513-20).

Plaintiff's "minimal medical treatment," including his minimal mental health treatment, was not a clear and convincing reason to discount plaintiff's testimony in this case. The ALJ did not discuss the fact that plaintiff did not have access to medical treatment when he was first diagnosed with an aneurysm in September 2013. AR at 387, 392. When plaintiff was able to obtain Medicaid coverage because of the aneurysm, the neurologist to whom he was referred by his doctor did not accept this insurance. AR at 53. His doctor told him that he needed to find a neurologist who accepted his insurance on his own. AR at 53. In October and November 2013, plaintiff received treatment for his neurological symptoms at Valley View Health Center. AR at 378-86.

Thus, the ALJ erred by drawing negative inferences regarding plaintiff's symptoms from his failure to seek or pursue regular medical treatment "without first considering any

ORDER - 11

explanation that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, *available at* 1996 WL 374186.  Plaintiff's "minimal medical treatment" was therefore not a clear and convincing reason for the ALJ to reject plaintiff's testimony regarding his symptoms.

    *(c)*    *Activities of Daily Living*

The ALJ also rejected plaintiff's testimony because he found it inconsistent with plaintiff's self-reported activities of daily living, including feeding and bathing himself, dressing, hygiene, meals, chores, shopping in stores once a month, managing his funds, watching television, spending time with others, and going to the park.  AR at 27-28 (citing AR at 262-69, 513-22).

    Without more, plaintiff's ability to perform some activities spread out over the course of the week, and go grocery shopping once per month at night, does not support a finding that he could work on a regular and sustained basis.  Here, there is no evidence that plaintiff's level of activity is inconsistent with his claimed limitations, or that plaintiff is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.  *See Orn v. Astrue*, 495 F.3d 625, 638-39 (9th Cir. 2007).  The ALJ did not specifically point to any activities that reasonably contradicted plaintiff's testimony, or were transferable to a work setting for a substantial part of the day.  As discussed below, the ALJ erred in discussing the lay witness testimony in this case, and that testimony supports plaintiff's description of his limited daily activities.  For example, his ex-wife Christal Kamienski reported that plaintiff slept almost all day and did not perform household chores or cook for himself, which was a change from his behavior before his aneurysm.  AR at 251.  She and the children told him he smelled bad, and he was unable to keep his house clean like before.  AR at 59-60.  His daughter, Michelle Hannah, reported that

plaintiff needed reminders to take care of his personal hygiene, only prepared sandwiches and frozen dinners for himself, and performed limited household chores such as laundry and a bit of vacuuming with reminders. He went to the store only once per month at night to buy frozen dinners. AR at 262-69. His girlfriend Deborah Walters stated that she helped take care of him, as he had problems remembering things like when to eat, shower, and take his medication, and often stayed in bed when he had migraines. AR at 292. The ALJ did not explain how these activities, or plaintiff's ability to watch television and manage his limited funds, contradicted his testimony regarding his symptoms.

Accordingly, without a more thorough discussion by the ALJ, plaintiff's daily activities were not a clear and convincing reason, supported by substantial evidence, for the ALJ to reject plaintiff's testimony regarding his symptoms including dizziness, memory problems, migraines, and angry outbursts. On remand, the ALJ shall reevaluate plaintiff's testimony, with the guidance provided by this Order.

B. The ALJ Erred in Evaluating the Lay Witness Testimony

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1527(f). Such testimony regarding a claimant's symptoms or how an impairment affects his ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

The ALJ noted that he had considered the statements of plaintiff's ex-wife, Christel

Kamienski, plaintiff's girlfriend Deborah Walters, and his daughter Michelle Hannah. AR at 29 (citing AR at 55-62, 245-52, 292-94). However, the ALJ found that "the statements are given little weight because they essentially repeat the claimant's allegations (e.g. migraines keep him bedridden for days), which are not fully credible for the reasons stated in this decision." AR at 29. The ALJ found that their allegation that plaintiff "has impaired neurologic functioning is inconsistent with the clinical findings of treatment providers and examiners who had unremarkable neurologic examinations of the claimant. In addition, while their statements may reflect their personal observations of the claimant, the medical evidence of record does not support finding greater limitations than those set forth in the above residual functional capacity." AR at 29.

As discussed above, the ALJ's reasons for rejecting plaintiff's testimony regarding his symptoms were erroneous. The Court finds that the ALJ also erred by relying on the same invalid reasons to reject the lay witness testimony in this case. The Ninth Circuit has repeatedly noted that friends and relatives in a position to observe a claimant's symptoms and daily activities can provide competent evidence to substantiate medical opinions of record, or to show directly how an impairment affects the claimant's ability to work. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); SSR 06-3p, *available at* 2006 WL 2329993. However, the ALJ does not appear to have meaningfully considered the lay testimony, which does not merely parrot plaintiff's assertion that "migraines keep him bedridden for days," as the ALJ stated. AR at 29. The lay witness statements describe their observations of plaintiff's limitations and how his functioning has changed since his surgery.

For example, Ms. Kamienski testified that plaintiff used to handle all the children's appointments prior to his surgery, but now forgets his children's events and appointments and even gets lost driving in a familiar place. AR at 57, 61-62. She also described severe angry

outbursts directed at strangers and his own children, which was a new behavior following his surgery. AR at 58-60. Ms. Walters also observed problems with memory, "getting upset," and noted that he stayed in bed when he had migraines. AR at 292. Finally, his daughter stated that her father had problems with memory following his surgery, and difficulty remembering to shower, clean his room, and wash his clothes. She had to make sure he took his medication and got to his appointments. AR at 293.

Finally, as discussed above with respect to plaintiff's credibility, the ALJ's general assertion that the lay witness testimony was contradicted by the normal physical examination findings of record is not sufficient where, as here, it is not clear how the examination findings referenced by the ALJ relate to the same symptoms. Accordingly, the ALJ did not provide specific and germane reasons for rejecting the lay witness testimony in this case. This evidence should also be reevaluated on remand.

## VIII. CONCLUSION

For the foregoing reasons, the Court ORDERS that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.

DATED this 4th day of January, 2018.

JAMES P. DONOHUE
Chief United States Magistrate Judge

ORDER - 15